Sarah Bootes Shattuck Ashland City Attorney 717 Main Street P.O. Box 487 Ashland, Kansas 67831
Dear Ms. Shattuck:
As City Attorney for the City of Ashland, you request our opinion regarding whether industrial development funds can be used for nuisance abatement. You have advised the governing body that such funds cannot be used for this purpose.
K.S.A. 2000 Supp. 12-1617h allows cities to levy a tax "for the purpose of creating a fund to be used in securing or retaining industries or manufacturing institutions for such city or near its environs. . . ." Moneys collected are placed in an industrial development fund and are to be used "for the purpose of inducing industries to locate or remain within the city or near its environs."[1]
In Attorney General Opinion No. 77-178, former Attorney General Curt T. Schneider concluded that industrial development funds could not be used to provide housing for the elderly because the expenditure did not bear "some demonstrable and direct relation to the statutory purpose of inducing industries to locate":
 "The city is given broad discretion in the use of the industrial fund, but it is not unlimited. Obviously, a great variety of municipal improvements, from better street lighting to better police protection to improved drainage, may render any given community a more attractive place to live, and indirectly, a more attractive site for potential industry. However, clearly, the industrial fund is not designed as a general capital improvement fund for the city, nor as a general operating contingency fund."[2]
Former Attorney General Vern Miller rejected the use of industrial development funds to build a theater on a college campus:
 "As you suggest, the project may well benefit the entire community, and may tend to make the city more attractive to industries. The same may be said of innumerable other civic projects. However, the direct and immediate purpose of the proposed expenditure would be that of constructing the theater itself. Whether the expenditure would ever induce any manufacturing or other industrial operations to locate in Independence is only conjectural. Industry attraction . . . is but a collateral and highly speculative result of the proposed expenditure. . . ."[3]
Former Attorney General Robert T. Stephan agreed with the conclusions of his predecessors that the expenditure should bear "some demonstrable and direct relation to . . . inducing industries to locate."[4] In Opinion No. 81-220, Attorney General Stephan concluded that a city cannot use industrial fund proceeds to pay legal fees incurred by citizens in challenging a school board decision to close a school:
 "We agree with General Schneider's analysis of the statutory restriction on use of industrial fund moneys, and believe that it is applicable here. Although the presence of a grade school within a city may render it a more attractive site for potential industry, the presence or absence of such a school does not bear a demonstrable and direct relation to the statutory purpose of `inducing industries to locate' in or near a city."
General nuisance abatement shares some of the same similarities as the various civic projects featured in past Attorney General opinions. Like a theater, a tennis court or a school, the abatement of unsightly nuisances may make a city more attractive to industries. However, the relationship between general nuisance abatement and luring new industries to a city is too tenuous to justify the use of industrial development funds.
We find no reason to depart from the reasoning of these former Attorneys General and agree with your conclusion that nuisance abatement generally does not bear a demonstrable and direct relation to the statutory purpose of inducing industries to locate or remain within or near the City of Ashland. However, this conclusion does not preclude the possibility of using industrial development funds for specific nuisance abatement projects if the governing body determines that there is a demonstrable and direct relation between the abatement project and inducing an industry to locate or remain within or near the City. Finally, the fact that the City has placed its industrial development funds into the City's general fund at the behest of the Kansas Department of Administration does not justify using such funds for any purpose other than the purpose stated in K.S.A. 2000 12-1617h and K.S.A.12-1617i.[5]
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 12-1617i.
[2] See also Attorney General Opinion No. 75-274 (industrial development funds may not be used to build public tennis courts).
[3] Volume VII, Opinions of the Attorney General, 178 (1971).
[4] Attorney General Opinion No. 80-207 (proceeds may be used to repair industrial park for the purpose of inducing industries to purchase the property); Attorney General Opinion No. 81-228 (proceeds may be used to repair airport runway where there is a direct relationship to inducing industries to relocate).
[5] See, also, Kan. Const., Art. 11, § 5 "(No tax shall be levied except in pursuance of a law, which shall . . . state the object . . . to which object only such tax shall be applied").